1   **WO**

2                                   NOT FOR PUBLICATION

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                      FOR THE DISTRICT OF ARIZONA

8

9   Jane M. Curry,                          )   No. 09-CV-2580-PHX-GMS
                                            )
10               Plaintiff,                  )   **ORDER**
                                            )
11   vs.                                     )
                                            )
12                                           )
    Michael J. Astrue, Commissioner of Social )
13   Security,                               )
                                            )
14               Defendant.                  )
                                            )
15   _____ )

16

17          Pending before the Court is Plaintiff Jane Curry's ("Curry" or "Plaintiff") appeal of

18   the Social Security Administration's decision to deny benefits. (Doc. 1).  For the following

19   reasons, the Court affirms the decision.

20          Curry, who was sixty-two years old at the time of the decision by the Administrative

21   Law Judge ("ALJ"), has a college education and past relevant work experience as a teacher

22   and school principal. (R. at 24, 56, 540).  Curry stopped working on June 1, 2005, the alleged

23   disability onset date. (*Id.* at 18, 56).   On June 6, 2005, she sought disability insurance

24   benefits, based on alleged severe chronic obstructive pulmonary disease, side effects from

25   medication, and depression. (*Id.* at 20).    Her claim was denied initially and upon

26   reconsideration. (*Id.* at 18, 39, 41–46, 48–50).    After a hearing, ALJ Ronald Robins

27   determined that Plaintiff was not disabled. (*Id.* at 18–25, 54–55, 535–50).  The Appeals

28   Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's

final decision for purposes of judicial review under 42 U.S.C. § 405(g). (*Id.* at 3–6, 13); *see* 20 C.F.R. § 404.981 (explaining the effect of a disposition by the Appeals Council).[1]

**DISCUSSION**

**I.     Standard of Review**

The Court has the "power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A reviewing federal court addresses only the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n. 13 (9th Cir. 2001). A federal court may "set aside a denial of benefits only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990)).

The Court may not "substitute [its] own judgment for that of the ALJ." *Id.* The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). At the same time, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.* (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). The Court also may not "affirm the ALJ's . . . decision based on evidence that the ALJ did not discuss." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *see also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (emphasizing the fundamental rule of administrative law that a reviewing court "must judge the propriety of [administrative] action solely by the grounds invoked by the agency" and

---

[1] All citations to the Code of Federal Regulations ("C.F.R.") are to the 2009 edition.

1    stating that if "those grounds are inadequate or improper, the court is powerless to affirm the

2    administrative action"). Even if the ALJ erred, however, "[a] decision of the ALJ will not

3    be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

4    2005).

5    **II.   Analysis**

6         Whether a claimant is disabled is determined using a five-step evaluation process.

7    Any claimant seeking disability benefits must initially demonstrate (1) that she is not

8    presently engaged in a substantial gainful activity and (2) that her disability is severe. 20

9    C.F.R. § 404.1520(a)–(c). After meeting steps one and two, a claimant then may be found

10   disabled in two ways. She may prove (3) that her impairment meets or equals one of the

11   specific impairments provided in the Listing of Impairments found at 20 C.F.R. pt. 404,

12   subpt. P, app'x 1. *Id.* § 404.1520(a)–(d). Alternatively, even if the claimant's impairment

13   does not meet or equal a listed impairment, a claimant can still establish a prima facie case

14   of disability by proceeding to steps four and five. A claimant must first prove (4) that her

15   residual functional capacity ("RFC") precludes her from performing her past work. Once the

16   claimant has established this prima facie case, the burden shifts to the government to present

17   evidence (5) that the claimant can perform a significant number of other jobs in the national

18   economy, considering the claimant's RFC, age, work experience, and education. If the

19   government does not meet this step-five burden, then the claimant qualifies for benefits.

20        At step one, the ALJ found that Curry has not engaged in substantial gainful activity

21   since June 1, 2005, the alleged disability onset date. (R. at 20.) At step two, the ALJ

22   concluded that Curry has the following severe combination of impairments: asthma, sinusitis,

23   and rhinitis. (*Id.*) The ALJ also determined, however, that Curry's alleged depression was

24   not a severe impairment. (*Id.*) At step three, the ALJ found that Plaintiff does not have an

25   impairment or combination of impairments that meets or equals one of the listed impairments

26   in 20 C.F.R. pt. 404, subpt. P, app'x. 1. (*Id.* at 21.) Because Curry's impairments did not

27   meet or equal any listed impairments, the ALJ assessed the RFC as follows:

28             After careful consideration of the entire record, the undersigned finds

that the claimant has the residual functional capacity to perform a restricted range of light work, in that she can lift or carry 10 pounds (lbs.) frequently and 20 lbs. occasionally, and can sit, stand and walk 6 hours in an 8-hour workday, is unlimited in her ability to push and pull with hand and foot controls, and can occasionally climb ramps and stairs, but would be unable to climb ladders, ropes, and scaffolds.  She can occasionally balance, stoop, kneel, crouch and crawl, but needs to avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation.

(*Id.* at 22).  The ALJ then explained his reasons for arriving at this RFC, which included consideration of Plaintiff's testimony and multiple physicians' records and opinions.  The ALJ then held at step four that, based on the opinion of a vocational expert, Curry was capable of performing her past relevant work as a teacher or a principal.  Finally, although the ALJ did not explicitly proceed to step five, the ALJ explained that Plaintiff was also capable of working as an educational consultant and a curriculum specialist.

Plaintiff makes several arguments relating to the ALJ's RFC finding: (1) that the ALJ insufficiently described the RFC by allegedly excluding several key factors; (2) that the ALJ gave insufficient weight to two treating physicians, Dr. Rundbaken and Dr. Van Osdol, each of whom reported RFCs that were more restrictive than that found by the ALJ; and (3) that the ALJ improperly considered Plaintiff's subjective complaint testimony.  Plaintiff next contends that, by questioning the vocational expert based on this allegedly faulty RFC, the ALJ incorrectly concluded that Plaintiff was able to return to her past relevant work.[2]  These bases for appeal lack merit.

## A.    Function-by-Function RFC Assessment

The RFC is a "function-by-function assessment" of an "individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling ("S.S.R.") 96-8p (July 2, 1996).  The ALJ must base the RFC "upon all of the relevant evidence of an individual's ability to do work-related

---

[2] Plaintiff also points out that the ALJ improperly listed her date last insured as December 31, 2007, rather than December 31, 2009.  Plaintiff offers no argument why this error is relevant to whether she is disabled, meaning reversal is inappropriate. *See Burch*, 400 F.3d at 679 (holding that harmless errors are not a basis for reversal).

1   activities." *Id.*  This includes "consider[ing] separately" the seven strength demands of a

2   claimant's exertional capacity: "[s]itting, standing, walking, lifting, carrying, pushing, and

3   pulling." *Id.*  When relevant, the function-by-function assessment also considers a claimant's

4   nonexertional capacity, such as a claimant's postural, manipulative, visual, communicative,

5   mental, and environmental-tolerance abilities. *Id.*

6        The ALJ gave a complete "function-by-function assessment" of the RFC.  While

7   Plaintiff contends the ALJ ignored certain exertional and nonexertional factors, such as the

8   ability to stand, walk, sit, reach, stoop, and climb, the RFC finding explicitly listed Curry's

9   ability to perform these and all other relevant activities.  And even to the extent the RFC did

10  not include limitations as severe as Plaintiff contends, the ALJ was not required to consider

11  limitations unsupported by substantial evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211,

12  1217 (9th Cir. 2005).

13       Moreover, contrary to Curry's assertion, the ALJ considered Curry's ability to

14  perform on a "regular and continuing basis."  "A 'regular and continuing basis' means 8

15  hours a day, for 5 days a week, or an equivalent work schedule." S.S.R. 96-8p.  The ALJ

16  specifically evaluated Plaintiff's ability to perform "in an 8-hour workday." (R. at 22).

17  Plaintiff offers no explanation why the ALJ's finding was legally or factually insufficient.

18  Even if the ALJ had not extensively linked Plaintiff's impairments to performance in a

19  standard workday, this alone is not error because the ALJ's decision complied with the

20  essential requirements of the relevant regulations. *See Montalvo v. Astrue*, 237 F. App'x 259,

21  262 (9th Cir. 2007) ("[S.S.R. 96-8p] essentially announces an *understanding* of the term

22  'regular and continuing basis' consistent with the ALJ's findings-namely, that the term

23  'means 8 hours a day, for 5 days a week, or an equivalent work schedule.'") (emphasis

24  added).

25       **B.    Treating Physician Testimony**

26       "The medical opinion of a claimant's treating physician is entitled to 'special

27  weight.'" *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989) (quoting *Embrey v. Bowen*,

28  849 F.2d 418, 421 (9th Cir. 1988)).  If the treating physician's opinion is not contradicted by

the opinion of another doctor, it may be rejected only for clear and convincing reasons supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Likewise, the treating physician's ultimate conclusions may only be rejected for clear and convincing reasons supported by substantial evidence. *Id.* If, however, the treating physician's opinion is contradicted by the opinion of another physician, it may be rejected upon specific and legitimate reasons supported by substantial evidence in the record. *Id.* at 830–31. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Embrey*, 849 F.2d at 421 (quotation omitted). A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). If the opinion is not well-supported by such techniques, or is inconsistent with other substantial evidence in the record, then the opinion will be weighed in light of several factors: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability by explanation and reference to relevant evidence, (4) consistency with the record as a whole, (5) specialization, and (6) any other factors tending to support or contradict the opinion. 20 C.F.R. § 404.1527(d).

Plaintiff contends that the ALJ gave insufficient weight to the opinions of two treating physicians, Dr. Rundbaken and Dr. Van Osdol. Because the opinions of Dr. Rundbaken and Dr. Van Osdol are controverted by the opinions of other physicians, the ALJ may reject these treating physicians' opinions by offering specific and legitimate reasons supported by substantial evidence in the record.[3] *See Lester*, 81 F.3d at 830–31. Although the ALJ did not explicitly cite the factors listed in 20 C.F.R. § 404.1527(d), the ALJ explained his specific and legitimate reasons by citing inconsistencies between the treating physicians' opinions

---

[3] To the extent certain opinions are not controverted by other physicians, the Court would nonetheless affirm because the ALJ offered clear and convincing reasons to reject the treating physicians' testimony.

1  and other evidence in the record, including Dr. Van Osdol's own treatment notes.

2         The ALJ cited Dr. Sourehissani, who performed a consultative medical examination,

3  and Dr. Resnick, a reviewing physician at the state agency, both of whom concluded that

4  Plaintiff was capable of performing light work. (R. at 24).  After examining Curry and

5  reviewing various self-reports and treatment notes, Dr. Sourehissani noted complaints about

6  shortness of breath and fatigue, but also explained that Curry appeared to be in "no acute

7  distress." (R. at 260).  Dr. Sourehissani further found that Curry's lungs showed "bilateral

8  equal air entry" and "no evidence of wheezing, rhonchi or crackles." (*Id.* at 261, 263).

9  Plaintiff also demonstrated a normal gait, alertness, and full strength in all extremities.

10  Based on the examination, Dr. Sourehissani concluded that Plaintiff could lift and carry

11  twenty pounds occasionally and ten pounds frequently, and could sit, stand, and walk up to

12  six hours in an eight-hour workday. (*Id.* at 263).  Dr. Resnick made similar findings and

13  concluded that Plaintiff maintained the same physical abilities as Dr. Sourehissani found,

14  along with an unlimited ability to push and pull and no evidence of any postural or visual

15  limitations. (R. at 247–56).  A nonexamining physician's opinion is relevant to weighing a

16  treating physician's opinion as long as the ALJ also relied on other types of evidence. *See*

17  *Lester*, 81 F.3d at 831 (acknowledging that an ALJ may properly rely on nonexamining

18  physician opinions when considered along with other evidence, such as laboratory reports,

19  contrary reports from examining physicians, and on the claimant's own statements) (citing

20  *Magallanes v. Bowen*, 881 F.2d 747, 751–52 (9th Cir. 1989)).  In this case, the ALJ

21  addressed a variety of evidence in rejecting the opinions of Dr. Rundbaken and Dr. Van

22  Osdol.

23         Aside from citing the findings of Dr. Sourehissani and the state medical consultation,

24  the ALJ explained that Dr. Van Osdol's conclusions were unsupported by his own treatment

25  notes. (R. at 24).  An inconsistency in treatment notes is a legitimate basis for rejecting a

26  treating physician's testimony. *See Connett*, 340 F.3d at 875 ("We hold that the ALJ properly

27  found that [the physician's] extensive conclusions regarding [the claimant's] limitations are

28  not supported by his own treatment notes.  Nowhere do his notes indicate reasons why [the

physician would limit the claimant to a particular level of exertion]."); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that the ALJ properly rejected a physician's testimony because "it was unsupported by rationale or treatment notes, and offered no objective medical findings to support the existence of [the claimant's] alleged conditions"). Dr. Van Osdol noted in his Pulmonary Residual Functional Capacity Questionnaire that Curry had shortness of breath, chest tightness, wheezing, and coughing, ultimately concluding that Curry would be unable to work consistently. (R. at 411–12). This questionnaire, however, is inconsistent with the majority of his treatment records. Over several years of treatment, Dr. Van Osdol's records repeatedly indicated that Curry reported being in no distress and being "very happy" with the treatment plan. (R. at 206–07, 212–13, 230–31). The records further show minimal, if any, chest pain, discomfort, abnormal heart rate, or weight gain, and testing displayed only "mild" airflow obstruction. (*Id.*) Not only could the ALJ legitimately have concluded that Dr. Van Osdol's questionnaire was inconsistent with his prior medical records, the questionnaire also noted that Plaintiff had a "good" prognosis given "proper medical management," such as the treatment regimen that Plaintiff had repeatedly praised. (R. at 412).

Furthermore, the treating physicians' opinions are inconsistent with Curry's daily activities. A claimant's daily activities provide a relevant basis for rejecting a treating physician's testimony. *See Coley v. Astrue*, 2010 WL 3220300, at *14, 20 (D. Or. Aug. 12, 2010) (holding that the claimant's daily activities were inconsistent with the treating physician's marked limitations) (citing *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601–02 (9th Cir. 1999)). As explained in more detail below, the ALJ noted that Plaintiff could perform a variety of activities, including frequent leisure activities, without reporting any serious symptoms. (R. at 21, 23). For example, Plaintiff could drive, cook, clean, make coffee, wash dishes, dress and groom herself, play with her dog, feed her fish, watch television, read the newspaper, attend church and social events, eat dinner at restaurants regularly, and take out-of-state trips. (*Id.*) Curry's ability to perform these numerous activities undercuts the treating physicians'

1   opinions regarding her capabilities.

2       **C.   Subjective Complaint Testimony**

3           When determining the severity of symptoms from alleged impairments, the ALJ must

4   determine whether the impairment or combination of impairments "could reasonably be

5   expected to produce pain or other symptoms." *Batson*, 359 F.3d at 1196 (quotation omitted).

6   If the ALJ determines that the claimant's alleged impairments reasonably could be expected

7   to produce the alleged symptoms, and if the "claimant's testimony shows no malingering,

8   then the ALJ may reject the claimant's testimony about severity of symptoms with 'specific

9   findings stating clear and convincing reasons for doing so.'" *Id.* (quoting *Smolen v. Chater*,

10  80 F.3d 1273, 1284 (9th Cir. 1996)).  The ALJ may consider "at least" the following factors

11  when weighing the claimant's credibility:

12          claimant's reputation for truthfulness, inconsistencies either in
            claimant's testimony or between her testimony and her conduct,
13          claimant's daily activities, her work record, and testimony from
            physicians and third parties concerning the nature, severity, and
14          effect of the symptoms of which claimant complains.

15  *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002) (internal quotations and

16  alterations omitted).  In weighing these factors, an "ALJ cannot be required to believe every

17  allegation of disabling pain . . . even where the claimant introduces medical evidence

18  showing that he [or she] has an ailment reasonably expected to produce *some* pain[]

19  [because] many medical conditions produce pain not severe enough to preclude gainful

20  employment." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  At the same time, "'[o]nce

21  a claimant produces objective medical evidence of an underlying impairment, an [ALJ] may

22  not reject a claimant's subjective complaints based solely on [the] lack of objective medical

23  evidence to fully corroborate the alleged severity of [those symptoms].'" *Moisa v. Barnhart*,

24  367 F.3d 882, 885 (9th Cir. 2004) (quoting *Rollins*, 261 F.3d at 856–57 (9th Cir. 2001)).

25          At the hearing, Curry testified that she is unable to work due to breathing problems

26  and a lack of energy.  For instance, she testified that she requires as many as twelve days to

27  recover from an asthma attack.  She further testified that her medication makes her very

28  fatigued, hampers her vision, and affects her memory, making it difficult to teach and to

1    remember things.  She likewise asserted that she had a foggy mind and feels depressed,

2    isolated, guilty, and worthless.  The ALJ found that Curry had a medically-determinable

3    combination of impairments based on asthma, sinusitis, and rhinitis, and the ALJ further

4    found that these impairments  reasonably could be expected to produce the symptoms that

5    Curry alleged. (R. at 20, 23).  The ALJ concluded, however, that Curry's "statements

6    concerning the intensity, persistence and limiting effects of these symptoms are not entirely

7    credible and are exaggerated." (*Id.* at 23).

8          Contrary to Plaintiff's contention, the ALJ offered more than "a single, conclusory

9    statement" regarding a claimant's credibility, S.S.R. 96-7p, instead explaining his decision

10   with clear and convincing reasons.  As stated above, the ALJ properly weighed the opinions

11   of several physicians and concluded that Curry maintained the ability to perform a range of

12   light work. (R. at 23–24).  The ALJ explained that, because the record indicates that

13   Plaintiff's symptoms were only "mild" and were "reversible" with treatment—treatment that

14   Plaintiff repeatedly endorsed—Plaintiff's testimony regarding the extent of her impairment

15   was not credible. (R. at 23); *see also Thomas*, 278 F.3d at 958–59 (holding that an ALJ may

16   reject a claimant's testimony to the extent it is inconsistent with other medical records).

17         The ALJ also found Curry's subjective complaint testimony inconsistent with her

18   daily activities.  Although a claimant need not be "'utterly incapacitated'" in order to be

19   disabled, *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001), the ALJ may consider

20   daily activities to reject subjective complaint testimony, *see Thomas*, 278 F.3d at 959

21   (holding that an ALJ may consider a claimant's daily activities when weighing credibility);

22   *Rollins*, 261 F.3d at 857 (rejecting the claimant's testimony regarding disabling pain because

23   the claimant could perform numerous normal daily activities, such as regularly caring for

24   children, cooking, housekeeping, shopping, and performing errands outside the home);

25   *Morgan*, 169 F.3d at 600 (affirming an ALJ's rejection of claimant's testimony based on

26   findings that the claimant could fix meals, do laundry, work in the yard, and occasionally

27   care for his friend's child); *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (rejecting

28   claimant's subjective complaint testimony where the claimant could cook, do the dishes, go

to the store, visit relatives, and drive).  The ALJ explained that Plaintiff could drive, cook, clean, make coffee, wash dishes, dress and groom herself, play with her dog, feed her fish, watch television, read the newspaper, attend church and social events, eat dinner at restaurants regularly, and even take out-of-state trips without experiencing breathing problems. (R. at 21, 23).  While not all of these activities indicate an ability to perform work, these activities, taken together, tend to negate Plaintiff's subjective complaint testimony.  For example, although Curry testified that she had breathing problems and a severe lack of energy, the record indicates that she has at least enough energy to engage in a variety of activities, including regularly going out to restaurants and attending other social events.[4] Likewise, regarding Plaintiff's allegations that her medication makes her fatigued and causes memory and eyesight loss, the ALJ pointed to several daily activities that contradict Plaintiff's statements.  Although Plaintiff contends that medication affects her eyesight, she regularly drives and watches television.  Plaintiff's willingness to perform numerous activities further suggests that her fatigue and memory problems do not prevent normal functioning.   The ALJ thus properly considered Plaintiff's daily activities in finding Plaintiff's testimony incredible.[5]

Furthermore, Plaintiff specifically challenges the ALJ's rejection of her statements regarding medication side effects.  The ALJ explained, however, that Plaintiff repeatedly told

---

[4] Because Plaintiff does not challenge the ALJ's step two finding that her alleged depression was not severe, Plaintiff's assertions regarding the symptoms of her alleged depression are inapposite.  And even if Plaintiff had challenged the ALJ's finding regarding depression, Plaintiff's many daily activities, both leisurely and otherwise, are arguably inconsistent with severe depression.

[5] To the extent Plaintiff asserts that the ALJ failed to consider the possible side effects of medication entirely, this argument is without merit.   The ALJ acknowledged that Plaintiff's medication has caused weight gain and fatigue, and the ALJ noted Plaintiff's allegations of a foggy mind, cloudy vision, and depression. (R. at 23).   The ALJ thus considered possible side effects, but ultimately found Plaintiff's allegations to be exaggerated based on her other daily activities and her prior inconsistent statements praising her treatment regiment.

1  her physicians that she was doing well and that she was very happy with her treatment plan.

2  (R. at 23).  These statements are inconsistent with Plaintiff's complaints about alleged side

3  effects and provide a clear and convincing reason for rejecting Curry's testimony.  *See*

4  *Thomas*, 278 F.3d at 958 (explaining that inconsistencies in a claimant's testimony is a basis

5  for rejecting the testimony); *see also Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007)

6  (implying that a claimant's refusal to seek medical assistance suggests the alleged

7  impairments are not extensive).  Had Plaintiff's side effects truly been disabling, it is unlikely

8  that Plaintiff would have repeatedly praised her treatment plan.  Finally, to the extent the ALJ

9  could have provided a more detailed explanation, this alone does not warrant reversal.  The

10  ALJ was not required to give the most "extensive" findings, as long as it is clear that he "did

11  not arbitrarily reject [Plaintiff's] testimony." *Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir.

12  1996).

13          **D.    Vocational Expert Hypothetical**

14          While an ALJ's hypothetical questions generally "must consider all of the claimant's

15  limitations," *Andrews v. Shalala*, 53 F.3d 1035, 1044 (9th Cir. 1995), the "ALJ is not bound

16  to accept as true the restrictions [offered by Plaintiff's counsel]," but rather is "'free to accept

17  or reject these restrictions . . . as long as they are supported by substantial evidence.'"

18  *Magallanes*, 881 F.2d at 756–57 (quoting *Martinez v. Heckler*, 807 F.2d 771, 773–74 (9th

19  Cir. 1986)).   Because the Court has already concluded that the ALJ's assessment of

20  Plaintiff's limitations was supported by substantial evidence and free of legal error, the ALJ

21  asked appropriate hypothetical questions to the vocational expert. *See id.* at 757 (holding that

22  the ALJ did not err by posing only specific hypothetical questions to the vocational expert

23  because the questions were based on limitations for which substantial evidence existed).

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1    **IT IS THEREFORE ORDERED** that the ALJ's decision is **AFFIRMED**.

2    **IT IS FURTHER ORDERED** directing the Clerk of the Court to terminate this

3 action.

4    DATED this 22nd day of September, 2010.

5

6    _G. Murray Snow_

7    G. Murray Snow
     United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28